C. E. LAWHEAD, *Receiver* v. FRED NELSON *et al.*

(No. 7453)

Submitted March 7, 1933. Decided March 14, 1933.

454

*R. M. Hiner,* for plaintiff in error.

*Calhoun & Calhoun* and *McCauley, Zimmerman & McCauley,* for defendants in error.

HATCHER, JUDGE:

This is a proceeding on a notice of motion for judgment. The circuit court directed a verdict and entered a judgment against Fred Nelson and directed a verdict and entered judgment in favor of J. A. Nelson, Sr., (later referred to as J. A. Nelson or as J. A.) and upon the latter judgment a writ of error was awarded plaintiff.

The demand on defendants is described in the notice as follows:

"* * * the sum of $3166.02, which to said C. E. Lawhead, Receiver of The Circleville Bank, a corporation, you owe and which from him you unjustly detain, for this, to-wit: Two certain checks, each dated December 28, 1931, each payable to J. A. Nelson and each signed by Fred Nelson, one of same in the sum of $821.60, and the other in the sum of $2345.02, said checks having been deposited in The Circleville Bank, at Circleville, West Virginia, by said J. A. Nelson, and drawn by the said Fred Nelson on the Farmers Bank of Pendleton, of Franklin, West Virginia, and being returned by said Farmers Bank of Pendleton on the ground of insufficient funds. The said checks hereinbefore mentioned and described were checks re-issued in place of checks of like amount, or practically the same amount, the only difference being a protest fee added to one of $1.60, by the said Fred Nelson to J. A. Nelson and deposited by him in The Circleville Bank and returned before on the grounds of insufficient funds * * *."

The plaintiff introduced evidence showing that on December 7, 1931, J. A. Nelson, had an overdraft in the Circleville Bank of $3,197.76, when he deposited with the Bank two checks of $820.00 and $2,345.02 respectively, payable to himself and drawn by Fred Nelson on the Farmers Bank. J. A. was given credit for the two checks, reducing his overdraft to $32.74. The checks were refused by the payee bank because of insufficient funds and returned to the Circleville Bank, of which both of the Nelsons were notified orally. The checks were not charged back to J. A. by the Circleville Bank but were carried as cash items. On December 28, 1931, Fred Nelson drew two new checks payable to J. A. for the same sums as the two of December 7, 1931, plus the protest fees on one of $1.60, and left them with the Circleville Bank. J. A. did not sign his name on the checks of December 28th, but what the bank official termed ''a credit endorsement'' was made on the checks and they were forwarded to the payee bank, which failed on December 30th, and again the checks were dishonored. The Circleville Bank was taken over by the plaintiff on December 29th.

J. A. denied notice that the checks of December 7th had been dishonored and denied any knowledge whatsoever of the checks of December 28th. The points made in his favor are that this proceeding is based on the checks of December 28th, which he never endorsed, from which he received nothing and of which he knew nothing.

If a consideration of this case were limited strictly to the checks of December 28th, the points for J. A. are well made. While the notice makes specific reference to those checks, this is not a common law pleading where strict construction of plaintiff's notice is required, but it may be regarded with liberality. ''A notice of motion for judgment being an informal proceeding, not governed in all respects by the common-law rules of practice and procedure, is sufficient if it clearly informs the defendant of the nature and object of plaintiff's claim and demand.'' *Kelley Co.* v. *Phillips,* 102 W. Va. 85, 134 S. E. 469. *Tuggle* v. *Belcher,* 104 W. Va. 178, 139 S. E. 653. Fortunately for the pleader, he alleges that those checks were in place of other checks of like amount, etc., deposited by J. A. in the Circleville Bank and ''returned be-

fore on the grounds of insufficient funds." This allegation is sufficient to inform J. A. clearly that the pleader relied on the original checks. The notice would have been more obvious to us had it alleged specifically that the Bank credited J. A. with the checks of December 7th. However, the notice did allege that the checks were *deposited* by J. A. in the Bank. 3 R. C. L., subject Banks, sec. 146, defines a deposit (in part) as follows: "A general deposit is a deposit generally to the credit of the depositor to be drawn upon by him in the usual course of the banking business * * *. A deposit in a bank is presumed to be general in the absence of an agreement to the contrary." It is apparent that J. A. understood and accepted the word "deposited" in the notice as used in a general sense, because (a) there was no demurrer to the notice, and (b) in a special plea of J. A. is this admission with reference to the checks: "* * * this defendant endorsed them and deposited them with the Circleville Bank and received credit for them with said Bank."

J. A. was advanced money of the plaintiff's bank, which in justice and fair dealing he should repay, unless the Bank failed in some legal duty to him. Under Negotiable Instruments Law, section 89, he was entitled to notice that the checks of December 7th had been dishonored. That notice could be given orally. Section 96, N. I. L. A witness for plaintiff says notice of the dishonor was given J. A., and he says it was not. The controversy on this vital matter was, of course, a jury question, and it was error for the court to direct in favor of J. A.

The judgment below is reversed and the verdict set aside as to J. A. Nelson and a new trial is awarded the plaintiff.

*Reversed; verdict set aside as to J. A. Nelson; new trial awarded.*